UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| WILLIAM BRADFORD, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:03CV1699 CDP |
| DORN SCHOFFMAN, et al., | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on defendants' motion for summary judgment. Bradford is being detained at the Missouri Sexual Offender Treatment Center (MSOTC) pending a state-court determination as to whether he should be committed as a sexually violent predator (SVP) under Missouri law. In this pro se action, plaintiff argues that MSOTC officials punished and retaliated against him for filing grievances in violation of his first amendment right to free speech, and that the disciplinary procedures used at MSOTC deprived him of his property without due process of law.[1]

Defendants contend that their handling of Bradford's grievances and MSOTC's disciplinary procedures are presumptively valid treatment decisions made

---

[1] Plaintiff also alleged denial of access to the courts but later dismissed that claim with prejudice after the motion for summary judgment was filed.

by mental health professionals. Defendants accordingly move for judgment as a matter of law on the ground that Bradford cannot demonstrate that these decisions were a substantial departure from accepted professional judgment, practice or standards, as required by Supreme Court precedent. Plaintiff opposes summary judgment. For the reasons stated herein, the motion for summary judgment will be granted.

## **Standards Governing Summary Judgment**

In considering a motion for summary judgment, the Court must "view all of the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from the facts disclosed in the pleadings." Reich v. ConAgra, Inc., 987 F.2d 1357, 1359 (8th Cir. 1993). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. "Although the moving party has the burden of demonstrating the absence of genuine issues of material fact, the 'nonmoving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial.'" Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003) (quoting Rose-Maston v. NME Hosps., Inc., 133 F.3d 1104, 1107 (8th Cir. 1998)).

## Background Facts

Defendant Blake is the Chief Operating Officer and head of MSOTC. Defendant Bellew-Smith is its Chief of Clinical Services, and defendant Englehart serves as MSOTC's Medical Director. Bradford resides at MSOTC as a civil detainee pending a state-court's determination as to whether he should be classified as an SVP. Both SVP's and civil detainees reside at MSOTC. The stated objectives of MSOTC are to protect the public and to enable its residents to become productive members of society. In furtherance of these objectives, MSOTC uses a cognitive-behavioral treatment model guided by a relapse prevention approach in treating sexually violent predators. The program consists of various phases and levels through which a sex offender must progress and acquire progressively more skills and tools to prevent future sexual re-offending. SVP's go through phase I and its associated levels 1-3 to develop the attitudes and behaviors that will facilitate their participation in the more demanding and stressful treatment levels to follow. Phase I treatment goals involve the resident: developing the recognition of the legitimate authority of the treatment team and society as a whole; developing the ability to accept and follow program and broader social rules of correct behavior; taking responsibility for his rule-violating actions and accepting reasonable sanctions for that behavior; and recognizing the value of sexual offender treatment

and its goals. MSOTC also provides mental health treatment for detainees like Bradford based upon this same treatment model, but without any emphasis on sexual behavior. Detainees progress along associated levels A-C, which are similar to those followed by SVP's.

To facilitate a safe and therapeutic environment, program rules are established. When a resident arrives at MSOTC, he is given a copy of these rules (which also spell out the consequences if the rules are not followed), and they are also posted on each ward. In addition to providing for the safety and security of MSOTC's staff and residents, the rules also support rehabilitative treatment goals by helping residents become responsible members of the community.

In accordance with these rules, residents are given violations if they display inappropriate behavior. Violations may delay a resident's advancement to another treatment level.[2] When a resident is observed violating the rules by a member of the MSOTC staff, the staff member completes an incident form and alerts a nurse. Once the resident is informed of the behavior, a violation is issued immediately because MSOTC has determined that: timely positive reinforcement and

---

[2]Each resident at the MSOTC is assigned to a treatment team--a multi-disciplinary team composed of a psychologist, a social worker, direct care/nursing staff, and recreation staff. Residents at MSOTC are periodically evaluated by their treatment team to determine whether to advance them to a different level.

consequences change behaviors more quickly; delay can be interpreted by residents as weakness or rewarding inappropriate behavior; and, behavior will escalate in the future in the absence of an immediate response.

A resident may appeal the imposition of a violation by filing a written request with his treatment team that the violation be expunged. If the resident is not satisfied with the outcome of the appeal process, he can request defendant Blake expunge the violation. A resident may also challenge the issuance of a violation by filing a grievance with Blake or the Client Rights Coordinator at the Missouri Department of Mental Health in Jefferson City, Missouri, and any adverse determinations can be appealed to the Director of Comprehensive Psychiatric Services within the Missouri Department of Mental Health.

On October 22, 2003, Bradford received a sanitary violation from MSOTC staff for rolling pieces of toilet paper up and using them to play a game with another resident. In response, Bradford filed eight grievances on the same day related to this violation:

> 1) Grievance 982: "written up for sanitation violation - claimed 2 persons touching same paper unsanitary. no more so than multiple persons touching same playing cards, etc. write up needs expunged;"
>
> 2) Grievance 983: "on 10/10/03 I was written up for touching same piece of paper as another resident. Many residents touch various games on this ward. If sanitation is of such great concern please

correct this sanitation issue;"

3) Grievance 984: "on 10/10/03 I was written up for touching same piece of paper as another resident. All residents touch ward fan switches. If sanitation is of such great concern please correct this sanitation problem;"

4) Grievance 985: "on 10/10/03 I was written up for touching same piece of paper as another resident. All residents and staff touch ward trash cans. If sanitation is of such great concern, please correct this sanitation problem;"

5) Grievance 986: "on 10/10/03 I was written up for touching same piece of paper as another resident. Residents sit in same chairs. If sanitation is of such great concern, please correct this sanitary problem;"

6) Grievance 987: "on 10/10/03 I was given sanitation violation for touching same piece of paper as another resident. Staff touch our snacks before giving them to us. They touch our food without gloves. If sanitation is such great concern correct this sanitation problem;"

7) Grievance 988: "on 10/10/03 I was written up for touching the same paper as another resident. All residents touch Kool-Aid containers. This is a sanitary issue more excessive than my write-up. If sanitation is such concern to staff, please correct this unsanitary problem;" and

8) Grievance 989: "on 10/10/03 I was written up for touching same piece of paper as another resident. All residents touch playing cards. If sanitation is of such great concern please correct this sanitation problem."

Bellew-Smith denied Bradford's grievances on October 22, 2003 as follows:

We are in receipt of grievances 983 through 989 in response to a violation you received. You were given a violation for rolling pieces of tissue or toilet paper up and utilizing those balls of paper to apparently

play some sort of game with a peer. The staff believed that the two of you had dampened the paper with saliva and were engaging in a sanitary violation.

In good faith, they attempted to do their job and gave you a sanitary violation. My opinion is that you should have been given both a sanitary violation and a horseplay violation. Alternately, given that you may have violated Blood and Body Fluid precautions, you might have been written up for Assault. Your complaints are not a grievable issue. The staff were attempting to do their job in the best of faith.

I suggest you accept responsibility for your own behavior and strive to cooperate with the rules of MSOTC. I would also like to caution you that sometimes, this attempt to flood the system with invalid complaints can be perceived as an attempt to manipulate or intimidate the staff.

The next day, Bradford requested advancement from level A to level B. Bradford's request for advancement was denied for "not . . . showing basic respect for staff or the facility by [his] actions in sending multiple, multiple grievances which take up staff time with frivolous complaints." Bradford was further advised that "[t]here is a requirement for level advancement that you treat staff with respect."

Bradford requested advancement to level B a second time on October 28, 2003. In his request, Bradford acknowledged that his last unacceptable behavior was "disrespect of staff by the grievances I have filed." Bradford's request for level B advancement was approved on October 31, 2003. Bradford is currently on level C. Bradford has filed additional grievances since the eight grievances at issue here

were denied.

## Discussion

Persons involuntarily committed to the state's custody by means of a civil proceeding retain liberty interests in essential care items such as adequate food, shelter, clothing, and medical care. See Youngberg v. Romeo, 457 U.S. 307, 324 (1982); see also Kennedy v. Schafer, 71 F.3d 292, 294 (8th Cir. 1995) (noting that involuntarily committed persons unquestionably have a protected liberty interest in a safe and humane environment). However, "detainee[s] simply do not possess the full range of freedoms of ... unincarcerated individual[s]." Bell v. Wolfish, 441 U.S. 520, 546 (1979). The United States Supreme Court has held that there must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Id. (quoting Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). Additionally, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of [detainees]." Bell, 441 U.S. at 546. To accomplish these goals, detention facility administrators should be given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to . . . maintain institutional security . . . and, in the absence of substantial evidence [that the policies and practices are

unnecessary], courts should ordinarily defer to their expert judgment in such matters." Id. at 547-48 (citations omitted). Under these standards, the Court will address Bradford's claims.

**1. Bradford has not established that defendants' policies with respect to the handling of his grievances constitute a substantial departure from accepted professional judgment**

Involuntarily committed civil detainees like Bradford retain "constitutionally protected interests in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training or treatment as may be required by those interests." Youngberg, 457 U.S. at 324. However, with regard to the nature of the treatment, the state "enjoy[s] wide latitude in developing treatment regimens" for mental health patients. Kansas v. Hendricks, 521 U.S. 346, 368 n.4 (1997). In short, those responsible for a civil detainee's care and treatment do not have to employ the best possible alternative or use the least restrictive means available. See Collingnon v. Milwaukee County, 163 F.3d 982, 990 (7th Cir. 1998) (finding that a disagreement about which of many professionally acceptable treatment plans should have been implemented does not make out a substantive due process claim). "[A] decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as

to demonstrate that the person responsible actually did not base the decision on such a judgment." Youngberg, 457 U.S. at 323.

Bradford contends that defendants violated his constitutional right to file grievances and retaliated against him for his exercise of his first amendment rights by denying his grievances, threatening him and refusing to allow him to advance to the next level.

Assuming for purposes of this motion only that Bradford has a constitutionally protected right to file grievances, his first amendment claim fails as a matter of law because Bradford was never prevented from filing grievances. The undisputed facts demonstrate that Bradford was not precluded from filing the eight grievances at issue here or subsequent grievances. To the extent that Bradford is attempting to argue that his free speech rights were violated because defendants did not "answer" his grievances, this argument is meritless as well. It is undisputed that Bellew-Smith denied the grievances by informing Bradford that his complaints were not "a grievable issue." Moreover, Bradford admitted to receiving this denial in his second request for advancement and voluntarily decided not appeal the denial of his grievances. Therefore, any claim that Bradford's first amendment rights were violated because he was not allowed to file grievances fails as a matter of law.

The gravamen of Bradford's complaint is that defendants retaliated against

him for exercising his right to file grievances. While MSOTC officials may not retaliate against Bradford for the exercise of a constitutional right, to prevail on his claim Bradford "must allege and prove that the conduct did not advance legitimate correctional goals or was not tailored narrowly enough to achieve such goals." Sanders v. St. Louis County, 724 F.2d 665 (8th Cir. 1983).

Defendants contend that they are entitled to summary judgment because Bradford cannot establish that their grievance procedures (either generally or as applied to Bradford) constitute a substantial departure from accepted professional judgment. I agree. It was Bellew-Smith's determination that Bradford's grievances were without merit and that the filing of eight duplicative, frivolous grievances could be perceived as an attempt to manipulate or intimidate the MSOTC staff. Moreover, Bradford's treatment team viewed his behavior as a refusal to accept responsibility for his own actions and disrespectful to the staff, which is inconsistent with the Phase I treatment goals outlined above. Because the treatment team determined that Bradford had not yet met these goals, his request for advancement was denied. Once Bradford was determined to have met the Phase I goals and accepted responsibility for his actions, the treatment team approved his advancement to level B. These treatment decisions are presumptively valid, and Bradford offers no evidence to demonstrate that they are a substantial departure

from accepted professional judgment, practice or standards.  See Youngberg, 457 U.S. at 323.

Furthermore, the record is devoid of evidence to suggest that the decisions were made to retaliate against Bradford for the exercise of constitutional rights rather than to advance legitimate treatment goals.  Instead, the undisputed evidence demonstrates that the treatment team consistently applied its professional judgment in its handling of Bradford's grievances by permitting Bradford to advance to level B once he met the Phase I treatment expectations.  Bradford has filed additional grievances since the eight at issue here were denied, and he has been permitted to advance to level C.   Under these circumstances, Bradford has failed to demonstrate that defendants' treatment decisions constitute such a substantial departure from accepted professional judgment as to demonstrate that defendants actually did not base their decisions on such a judgment.  See Youngberg, 457 U.S. at 323.  For this reason, Bradford's claims that defendants violated his first amendment rights and retaliated against him fail as a matter of law and must be dismissed.[3]

**2. Bradford has not established that defendants' policies with respect to the handling of violations and advancement procedures constitute a substantial departure from accepted professional judgment**

---

[3]This includes Bradford's claims that defendants conspired to violate his first amendment rights and retaliate against him.

Bradford also claims that he should have been afforded procedural due process protections, including "written notice of alleged misconduct, time to prepare a defense, an impartial hearing, and the ability to present evidence and witnesses in his defense" before he was issued a violation and denied advancement to level B. "[T]here exists no basis in the Due Process Clause or elsewhere in the Constitution for requiring that discipline not be imposed upon a pretrial detainee for violations of institutional discipline without the particular procedural mechanisms invoked by plaintiff here, including notice, a hearing or specific findings, a right to counsel, and an independent investigation of the charges." Smith v. Copeland, 892 F. Supp. 1218, 1233 (E.D. Mo. 1995). "Only if . . . the restriction or condition is 'arbitrary or purposeless' -- is the action a punishment that violates Due Process if inflicted upon detainees." Id. at 1227 (quoting Wolfish, 441 U.S. at 539).

To the extent Bradford argues that the failure to advance him to level B amounts to "discipline," this claim summarily fails because there is no evidence that the denial of his request for advancement to level B amounts to punishment proscribed by the Due Process Clause. See id.

Bradford's due process claim also fails because he cannot establish that the procedures used by MSOTC to issue violations constitute a substantial departure from accepted professional judgment. The MSOTC staff has determined to issue

violations immediately when a resident is observed engaging in unacceptable behavior because, in its professional judgment: timely positive reinforcement or consequences change behaviors more quickly; delay can be interpreted as weakness; and, behaviors can escalate in the future if immediate action is not taken. Although Bradford personally disputes the propriety of these treatment decisions, he offers no competent evidence that the MSOTC staff's judgment is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the determination was not based on such a judgment. See Youngberg, 457 U.S. at 323. When these presumptively valid treatment decisions are combined with the undisputed fact that residents may request expungement of the violation or appeal its issuance through the grievance process, it is clear that Bradford cannot demonstrate that his due process rights were violated by the immediate issuance of a sanitary violation.

Although separately pleaded in his complaint, Bradford's related procedural due process claim is that his conditions of confinement are worse than those provided to prisoners because he was not given notice before being punished. "Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg, 457 U.S. at 321-22. Even if I

interpreted the facts alleged in Bradford's complaint to be the improper conditions of confinement, Bradford has still not shown that the MSOTC staff's decisions regarding his conditions of confinement are such substantial departures from accepted professional judgments as to demonstrate that defendants actually did not base the decisions on such judgments. See id. at 323. Consequently, I will enter judgment in favor of defendants on Bradford's claim that his conditions of confinement are worse than those undergone by prisoners.

For this reason, defendants are entitled to summary judgment on Bradford's due process claims.[4]

### 3. Bradford's Conspiracy to Deprive Him of Property Claim Fails Because He Has Not Identified the Property at Issue

Defendants move for summary judgment on Bradford's claim that they conspired to deprive him of property because the complaint fails to identify the property at issue. Bradford fails to address this claim or identify the nature of his property interest in his opposition to summary judgment, so I will enter judgment in favor of defendants on this claim.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment

---

[4]This includes his claim that defendants conspired to deprive him of Due Process.

[#49] is granted, and plaintiff's amended complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered the same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 19th day of May, 2006.